**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **FORTE HUMAN CAPITAL, INC.** *and* | § | |
| **LUIS M. GONZALEZ** | § | |
| | § | |
| *Plaintiffs*, | § | |
| **v.** | § | |
| | § | |
| **TODD SHISHIDO, PAUL KOMEIJI,** | § | **EP-24-CV-00365-LS** |
| **GEORGE GUSMAN, III,** *and* **NATIVE** | § | |
| **HAWAIIAN LEGAL DEFENSE &** | § | |
| **EDUCATION FUND,** *also known as* | § | |
| **HO'OMAKA FOUNDATION,** | § | |
| | § | |
| *Defendants.* | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Presently before the Court is Defendants Native Hawaiian Legal Defense and Education

Fund (the Fund), Todd Shishido, Paul Komeiji, and George Gusman III's "Motion for Protective

Order" (ECF No. 57) filed pursuant to Federal Rule of Civil Procedure 26(c).  The Honorable

District Judge Leon Schydlower referred the motion to the undersigned Magistrate Judge.   For

the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

**A.  Factual Background**[1]

The Fund is a nonprofit Hawaii corporation, and it is a Native Hawaiian Organization

(NHO) that participates in the Small Business Administration's 8(a) Business Development

Program.[2]  The Fund was founded by individual defendants, Shishido, Komeiji, and Gusman,

---

[1] Except as otherwise indicated, the facts recounted in this subsection are largely undisputed based on the parties' answers to each other's pleadings.

[2] *See* Pls.' First Am. Compl. at ¶ 6; Defs.' First Am. Ans. to First Am. Compl. & Original Countercls. at ¶ 6 [hereinafter, Defs.' First Am. Ans. & Countercls.], ECF No. 34.

who are residents of Hawaii.[3]  Together, Defendants are equity owners of multiple entities (hereinafter, generally referred to as "affiliated entities") that provide, *inter alia*, healthcare staffing services to the federal government, including the Department of Defense (DOD), under federal contracts.[4]  The Fund owns the majority (51%) share in each of these entities, whereas Shishido, Komeiji, and George each owns a minority share.[5]

In 2013, Defendants hired Plaintiff Luis M. Gonzalez, a service-disabled Air Force veteran and a Texas resident, to serve as the Vice President of Kukulu, LLC, an affiliated entity.[6] In that role, Gonzalez's responsibilities included managing the entity's government contracts and overseeing contract recruiting.[7]  Sometime later, Defendants hired Gonzalez as the Vice President of Akahi Associates, LLC, also an affiliated entity.[8]

In March 2020, Gonzalez and Shishido began discussions about forming a Service-Disabled Veteran-Owned Small Business (SDVOSB) entity to compete for federal staffing contracts with the Veterans Administration (VA).[9]  Those discussions led to the formation of

---

[3] Defs.' First Am. Ans. & Countercls. at ¶¶ 101–02, 105; Pls.' Ans. to Defs.' Countercls. at ¶ 23, ECF No. 50.

[4] *See* Pls.' First Am. Compl. at ¶¶ 20(a), 23; Defs.' First Am. Ans. & Countercls. at ¶¶ 20(a), 105, 113.

[5] Pls.' First Am. Compl. at ¶¶ 20(a), 23; Defs.' First Am. Ans. & Countercls. at ¶¶ 20(a), 23, 105.

[6] Pls.' First Am. Compl. at ¶ 20(b); Defs.' First Am. Ans. & Countercls. at ¶ 119.

[7] Pls.' First Am. Compl. at ¶¶ 20(b), 26; Defs.' First Am. Ans. & Countercls. at ¶ 119; Pls.' Ans. to Defs.' Countercls. at ¶ 28. Contract recruiting means finding individuals to fill contracted positions, whereas contract management means overseeing the performance of the contract and addressing issues that may arise in the performance of the contract.  Defs.' First Am. Ans. & Countercls. at ¶ 120; Pls.' Ans. to Defs.' Countercls. at ¶ 28.

[8] Defs.' First Am. Ans. & Countercls. at ¶ 122; *see also* Pls.' Ans. to Defs.' Countercls. at ¶ 34.

[9] Pls.' First Am. Compl. at ¶¶ 34, 67; Defs.' First Am. Ans. & Countercls. at ¶ 126.

Plaintiff Forte Human Capital, Inc: On June 29, 2020, Forte was organized as a Texas corporation.[10]  Gusman, who is an attorney licensed in Hawaii, was involved in Forte's creation and its qualification as an SDVOSB: he drafted Forte's bylaws and prepared its application to the SDVOSB program.[11]  Forte's bylaws and formation documents named Gonzalez as the sole officer of Forte as its President, and the bylaws named Shishido and Gusman as Forte's directors.[12]  Forte was authorized to issue 1,000 shares; of those shares, 510 shares were issued to Gonzalez, 193 shares were issued to the Fund, and 99 shares each were issued to Shishido, Gusman, and Komeiji, respectively.[13]

In July 2020, Forte and Kako'o Services LLC, an affiliated entity, entered into a staffing services agreement through which Forte agreed to provide Kako'o with recruiting and staffing services in connection with Kako'o's federal contracts.[14]  Forte entered into project management services agreements with Akahi Associates and another affiliate entity, Kili LLC.[15]  In December 2021, Forte was formally established as a SDVOSB with the VA, and it became eligible to provide healthcare staffing services to the VA.[16]

In late 2023, the parties' relationship took a turn for the worse.  According to Gonzalez, after he received previously-withheld Forte's financial statements in November 2023 from

---

[10] Pls.' First Am. Compl. at ¶ 34; *see also id.* at ¶ 67; Defs.' First Am. Ans. & Countercls. at ¶¶ 126–29; Pls.' Ans. to Defs.' Countercls. at ¶ 29.

[11] Pls.' First Am. Compl. at ¶¶ 36, 74; Defs.' First Am. Ans. & Countercls. at ¶¶ 36, 74, 136–38.

[12] Defs.' First Am. Ans. & Countercls. at ¶¶ 140–41; Pls.' Ans. to Defs.' Countercls. at ¶¶ 32–33.

[13] Defs.' First Am. Ans. & Countercls. at ¶ 139; Pls.' Ans. to Defs.' Countercls. at ¶ 31.

[14] Pls.' First Am. Compl. at ¶ 39; Defs.' First Am. Ans. & Countercls. at ¶ 39.

[15] Defs.' First Am. Ans. & Countercls. at ¶ 145; Pls.' Ans. to Defs.' Countercls. at ¶ 37.

[16] Defs.' First Am. Ans. & Countercls. at ¶¶ 146–47; Pls.' Ans. to Defs.' Countercls. at ¶¶ 38–39.

Kukulu (Defendants ran Forte's accounting and financial reporting functions through Kukulu)—Gonzalez confronted Defendants about Forte's finances.[17]  According to Defendants, in late 2023, Gusman, Shishido and Komeiji approached Gonzalez to discuss, among other things, Forte's declining performance with Kako'o, Kili, and Akahi Associates in connection with their services agreements with Forte.[18]  In April or May 2024, these entities terminated their agreements with Forte.[19]  Effective September 2024, Shishido and Gusman resigned from Forte's board of directors.[20]

## B.  Relevant Procedural History

On August 5, 2024, Plaintiffs sued Defendants in state court.[21]  After Defendants removed the case to federal court, Plaintiffs filed their First Amended Complaint (ECF No. 25) in September 2025; therein, Plaintiffs assert claims for breach of fiduciary duty (a derivative claim), quantum meruit, fraud, tortious interference with business relations, and legal malpractice.[22]  Plaintiffs seek, *inter alia*, $25 million in damages (not including exemplary damages).[23]

On November 10, 2025, Plaintiffs served Defendants with their Requests for Production of Documents.  On January 9, 2026, Defendants filed the instant motion for protective order

---

[17] Pls.' First Am. Compl. at ¶¶ 46–50.

[18] Defs.' First Am. Ans. & Countercls. at ¶ 165.

[19] Pls.' First Am. Compl. at ¶ 51(f); Defs.' First Am. Ans. & Countercls. at ¶¶ 51(f), 166.

[20] Defs.' First Am. Ans. & Countercls. at ¶¶ 35, 179; Pls.' Ans. to Defs.' Countercls. at ¶¶ 33, 59.

[21] Defs.' Notice of Removal at 1, ECF No. 1.

[22] Pls.' First Am. Compl. at ¶¶ 12, 14, 16, 19, 20.

[23] *Id.* at ¶¶ 90(a).

regarding some, but not all, of the requests in Plaintiffs' Requests for Production of Documents.[24] On January 16, Plaintiffs filed their response to the motion,[25] and Defendants followed by filing a reply on January 23, 2026.[26]

## II. STANDARD

Federal Rule of Civil Procedure 26(c) empowers a court to issue an order to protect a party from oppression, undue burden, or expense. Fed. R. Civ. P. 26(c). The Court may, *inter alia*, forbid discovery, order a party to provide discovery, or limit the scope of discovery. *Id.* 26(c)(1)(A), (c)(1)(D), (c)(2). "The court also has discretion whether to limit discovery to matters occurring in a particular period of time." 8A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2040 (3d ed. Sept. 2025 update).

Rule 26(b) sets out the scope of permissible discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Lopez v. State Farm Lloyds*, 348 F.R.D. 419, 421–22 (W.D. Tex. 2025) (cleaned up). "Although broad, 'Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'" *Id.* at 422 (quoting *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)).

"[U]nless the relevancy of a discovery request is facially clear," the party seeking discovery "must specifically articulate why the request is relevant to the claims or defenses in the

---

[24] Defs.' Mot. for Protective Order [hereinafter Defs.' Mot.], ECF No. 57.

[25] Pls.' Resp. to Defs.' Mot. [hereinafter Pls.' Resp.], ECF No. 61.

[26] Defs.' Reply to Pls.' Resp. to Defs.' Mot. [hereinafter Defs.' Reply], ECF No. 66.

case." *Id*. The party resisting discovery, on the other hand, "'must show specifically how each request is not relevant or how each [request] is overly broad, burdensome or oppressive.'" *Id.* (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

### III.    DISCUSSION

Plaintiffs' Requests for Production of Documents lists seventy-eight numbered requests (RFPs). On this motion, Defendants challenge the propriety of RFP Nos. 11, 14, 19, 22 through 26, 31, 33, 38, 56 through 58, 59 through 63, 69 through 73, and 76 through 78—on the grounds that they are irrelevant, not proportional to the needs of the case, and/or unduly burdensome.[27] Specifically, for most of these RFPs, Defendants challenge the temporal scope of discovery sought. So, the Court begins with the temporal scope.

### A.  Temporal Scope

A summary of the backdrop behind the parties' temporal scope dispute is helpful. Back in October 2025, Plaintiffs served a subpoena on Defendants' accounting firm, KKDLY LLC, a non-party to this lawsuit, and the subpoena commanded KKDLY to produce certain documents over a period from 2013 to the present.[28] The parties disputed that time period, and Defendants filed a motion for a confidentiality and protective order regarding the subpoena.[29] At a hearing held on October 30, 2025, Judge Schydlower orally granted Defendants' motion in part and ruled that the temporal scope, for purposes of the subpoena, is "2015 onward."[30] On the same day,

---

[27] Defs.' Mot. at 5.

[28] Subpoena at 6, ECF No. 32; *see also* Defs.' First Am. Ans. & Countercls. at ¶ 144 (describing KDDLY's role); Pls.' Ans. to Defs.' Countercls. at ¶ 36 (same).

[29] Defs.' Mot. for Protective Order Regarding Subpoena at 1, ECF No. 33.

[30] Oral Argument at 17:13–17:46, ECF No. 44.

after the hearing, the judge issued a text order instructing the parties to submit a joint proposed protective order, limiting the time scope to 2015 onward.[31]  On November 14, 2025, the parties jointly submitted the proposed order,[32] and on November 17, 2025, Judge Schydlower entered that order; the order states: "The relevant time period for the documents sought in the *Subpoena* is January 1, 2015[,] through the present."[33]

Separate and apart from the subpoena, on December 16, 2025, the parties jointly filed a motion for entry of an agreed confidentiality and protective order,[34] and Judge Schydlower entered the order on December 22, 2025; so entered, this order states:

> Pursuant to this Court's text order of October 30, 2025, document discovery in this matter shall be limited to the period from January 1, 2015[,] to the present, *unless otherwise ordered* or agreed by the parties.  This temporal limitation shall apply to *all third-party subpoenas* and *party discovery requests*.[35]

With the above backdrop, the Court returns to the parties' present dispute.  Plaintiffs' Requests for Production of Documents defines "Relevant Period" as "January 1, 2015[,] through the present, unless otherwise specified in a particular request."[36]  Defendants argue that given the

---

[31] Text Order (Oct. 30, 2025).

[32] *Id.* at 26:38–27:00; Joint Mot. for Protective Order, ECF No. 46.

[33] Protective Order at ¶ 2 (emphasis added), ECF No. 49.

[34] Joint Mot. for Protective Order, ECFR No. 55.

[35] Agreed Confidentiality & Protective Order at § 1 (emphasis added), ECF No. 56.  A provision on the temporal scope of discovery is not a part of this District's standard Confidentiality and Protective Orders, which govern discovery of confidential, sensitive, and private information.  W.D. Local Rules, Apps. H-1, H-2; *see also* W.D. Local Rule CV-26(c) ("In cases where the parties agree to a protective order, the forms set out in Appendix H-1 and Appendix H-2 are approved.").  Plaintiffs represent that counsel for Defendants prepared the initial draft of the December 22, 2025 agreed confidentiality and protective order, Pls.' Resp. at 5; if so, the inclusion of the provision along with the language "unless otherwise ordered" in the order suggests a desire to litigate the temporal scope issue at a later time.  To be sure, as entered, the December 22, 2025 order is otherwise consistent with Judge Schydlower's prior order regarding the temporal scope of the KKDLY subpoena.

[36] Pls.' First Written Disc. to Defs. at 2, ECF No. 57-1.

breadth of Plaintiffs' RFPs, this time period will impose an undue burden on Defendants, costing them approximately between $293,800 and $565,750, and therefore, the discovery sought is disproportional to the needs of the case.[37]  They request that the Court narrow the temporal scope for the RFPs to the period between January 1, 2020, and May 2024.[38]  Defendants explain that back in December 2025, when the parties filed their joint motion for entry of their agreed confidentiality and protective order, Defendants did not yet know the enormous cost of producing all of the documents responsive to Plaintiffs' RFPs.[39]  Defendants add that the very language of Judge Schydlower's December 22, 2025 confidentiality and protective order, to wit, "unless otherwise ordered," gives the Court flexibility to grant their request.[40]

Based on a preliminary estimate from Defendants' e-discovery vendor, Gusman testifies that discovery from 2015 onward would require producing 256,000 responsive documents which would cost them $65,750 in vendor's fees and take their attorneys 28 months to review the documents costing Defendants $500,000 in attorney's fees at an hourly rate of $384—whereas limiting discovery to 2020 onward would require producing 132,000 responsive documents which would cost them $43,800 in vendor's fees and take their attorneys 14 months to review the documents costing Defendants $250,000 in attorney's fees.[41]

---

[37] Defs.' Mot. at 2, 4, 10.

[38] *Id.*; Gusman Decl. Ex. B-1, ECF No. 57-2.

[39] Defs.' Reply at 2.

[40] *Id.*

[41] Gusman Decl. at 1–2.

Plaintiffs respond that the law-of-the-case doctrine bars reconsideration of Judge Schydlower's prior orders setting the temporal scope as 2015 onward.[42]  Further, Plaintiffs question the soundness of Defendants' estimate of how long it would take and how much it would cost to produce the requested documents.[43]  Specifically, Plaintiffs argue, *inter alia*, that Defendants' projected vendor's fees for the 2015 and 2020 discovery onsets differ by only $21,950—representing 0.088% of Plaintiffs' $25+ million damages claim—and that Defendants' total cost projection assumes that senior attorneys—as opposed to junior associates or contract attorneys who charge substantially less—will review the documents.[44]

The Court disagrees with Plaintiffs' law-of-the-case argument.[45]  A district court "is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders," *Louisiana v. Guidry*, 489 F.3d 692, 698 (5th Cir. 2007), and the court's discovery ruling is such an interlocutory order, *see Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008) (The law-of-the-case "doctrine does not apply to interlocutory orders" such as "prior discovery rulings.").[46]  Prior to final judgment, the court is "free to reconsider and

---

[42] Pls.' Resp. at 4–5.

[43] *Id.* at 5–8.

[44] *Id.* at 7.

[45] *See Arizona v. California*, 460 U.S. 605, 618 (1983) ("[L]aw of the case is an amorphous concept.  As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."); *United States v. Wills*, 40 F.4th 330, 334 (5th Cir. 2022) ("The law of the case doctrine posits that ordinarily an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on subsequent appeal." (internal quotes omitted)).

[46] *Cf. also Guidry*, 489 F.3d at 698 (concluding the law-of-the-case doctrine did not apply in that case because "the trial court's initial overruling of [the defendant's] peremptory exceptions" did not "amount[] to a 'decision on appeal'" and stating that the court was free to reconsider it on a later-filed motion for summary judgment).

reverse" any order "for any reason it deems sufficient." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citing Fed. R. Civ. P. 54(b)).

The Court, however, finds that Plaintiffs' arguments countering Defendants' time and cost projections have some appeal. To be sure, Plaintiffs' $25 million damages amount may be, to borrow Defendants' terminology, a "pie-in-the-sky" amount.[47] Plaintiffs though allege, for example, that between 2021 and 2023, Defendants procured over $91.51 million in SBA-awarded DOD staffing contracts, and all of those contracts were managed through Forte.[48] Perhaps, the fair amount due, if any, to Plaintiffs for rendering these contract services is less than $25 million; perhaps, it is $10 million or far less. But at this stage of the litigation, the true amount owed, if any, to Plaintiffs is unknowable. Hence, the Court cannot readily dismiss Plaintiffs' suggestion that the actual cost for complying with their RFPs would amount to a small fraction of the amount in controversy and, therefore, that their requested discovery is proportional to the needs of the case.[49]

Then, there is another hurdle for Defendants. Granting their request to narrow the temporal scope would be inconsistent with Judge Schydlower's earlier ruling on the subpoena that the relevant time period goes back to 2015.[50] Defendants never sought the judge's

---

[47] Defs.' Mot. at 4; *see also* Defs.' Reply at 16 ("Plaintiffs' argument that its claim for damages is $25+ million is speculative and unsubstantiated.").

[48] Pls.' First Am. Compl. at ¶ 44.

[49] *See Lopez*, 348 F.R.D. at 428 ("In assessing the proportionality of discovery, courts consider the following factors: 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" (quoting Fed. R. Civ. P. 26(b)(1))).

[50] Oral Argument at 17:13–17:46 ("For purposes of [ECF] Number 33, I am [going to] grant the motion for confidentiality and protective order. In this respect, I am going to narrow the scope to 2015 onward. Five years seems reasonable to me in that regard."); Defs.' Mot. for Protective Order Regarding

reconsideration of that ruling.  And they may not use a motion such as the present one "as a vehicle for relitigating old issues and for otherwise taking a [second] bite at the apple."  *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL1570GBDSN, 2023 WL 1797629, at *12 (S.D.N.Y. Feb. 7, 2023) (internal quotes omitted)).

Accordingly, the Court, exercising its discretion, denies Defendants' request to narrow the time period from 2015 to 2020.  The Court **APPROVES** Plaintiffs' definition of the "Relevant Period" as "January 1, 2015[,] through the present, unless otherwise specified in a particular request"[51]—with one **modification**: "the present" means November 10, 2025, the date on which Plaintiffs served their Requests for Production of Documents.  This definition of "the present" **SHALL APPLY** to "present" and "the present" as used in the RFPs at issue on this motion.  In the remainder of this Opinion and Order, the Court will not address Defendants' temporal scope objections.  The Court **DENIES** Defendants' motion regarding the temporal scope of the RFPs at issue in the motion.

### B.  Disputes About Specific RFPs

### 1.  *RFP Nos. 11, 19, 22, 23, and 24*

These RFPs state as follows.[52]

- RFP No. 11: All invoices issued by *any Corporate Affiliate* to Forte Human Capital, Inc. or *another Corporate Affiliate* from January 1, 2015, through the present, including invoices for administrative support, overhead, accounting services, legal services, HR services, IT services, or any other services or charges.
- RFP No. 19: All documents evidencing wire transfers, ACH transfers, or electronic payments between Forte Human Capital, Inc. and any Corporate Affiliate, or *among Corporate Affiliates*, from January 1, 2015, through the present, including wire transfer confirmations, ACH authorizations, and bank records showing the transfers.

---

Subpoena at 1 ("The relevant time period for the documents sought in the Subpoena is January 1, 2015[,] through the present.").

[51] Pls.' First Written Disc. to Defs. at 2.

[52] *Id.* at 11–12.

- RFP No. 22: All service agreements, management agreements, or other contracts among *Corporate Affiliates* (not including Forte), including agreements between *any two or more Corporate Affiliates* for provision of services, cost sharing, overhead allocation, or any other arrangement. Intercompany agreements are discoverable regardless of execution date, including agreements executed before January 1, 2015, if such agreements remained in effect or governed transactions during the Relevant Period (January 1, 2015, through the present).
- RFP No. 23: All promissory notes, loan agreements, lines of credit, credit applications, or other evidence of debt between Forte Human Capital, Inc. and any Corporate Affiliate, or *among Corporate Affiliates*. Loan agreements and promissory notes are discoverable regardless of execution date, including agreements executed before January 1, 2015, if such loans remained outstanding during the Relevant Period (January 1, 2015, through the present). For transaction records such as repayment schedules, payment histories, and interest calculations, produce records from January 1, 2015, through the present only.
- RFP No. 24: All documents concerning intercompany charges, cost allocations, overhead allocations, or expense allocations between Forte and any Corporate Affiliate, or *among Corporate Affiliates*, including allocation methodologies, spreadsheets showing allocations, and authorizations for such charges.

The parties dispute on these RFPs centers on documents between or among "Corporate Affiliates." Plaintiffs' Requests for Production for Documents define "Corporate Affiliates" as:[53]

    a. Kako'o Services LLC
    b. Kukulu LLC
    c. Kili LLC
    d. Akahi Associates LLC
    e. Cornerstone Services & Solutions LLC
    f. Kaula AE LLC
    g. Kuhana Associates LLC
    h. Kahua Services LLC
    i. Akahi InGenesis Partners LLC
    j. Bestica, LLC
    k. *Any other entity in which any Defendant holds an ownership interest, serves as an officer or director, or exercises control*.

In this definition, Section (k) serves as a catch-all provision, which appears overbroad.

---

[53] Pls.' First Written Disc. to Defs. at 1.

Defendants state that they are producing responsive documents between Forte and any Corporate Affiliates, but they argue that any documents between or among Corporate Affiliates are irrelevant to Plaintiffs' claims.[54]  They explain that the Corporate Affiliates have operated under multiple government contracts for many years, most of which were never remotely related to Forte or Gonzalez.[55]  They argue that Defendants should not be required to produce documents that are (a) unrelated to Forte and (b) solely between Corporate Affiliates.[56]

Plaintiffs respond that these RFPs are relevant to their theory of alter ego liability in that they seek alter ego evidence.[57]  In their complaint, Plaintiffs allege that the Fund and the "Corporate Affiliates" are alter egos of Shishido, Komeiji, and Gusman.[58]

"Alter ego liability permits a plaintiff to pierce an entity's 'corporate veil' and hold the entity's shareholders, directors, and officers individually liable for *the entity's obligations*." *Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 266 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (emphasis added).  However, if Plaintiffs had nothing to do with a Corporate Affiliate, A, such that A owed no obligation to Plaintiffs, the Court fails to see how A,

---

[54] Defs.' Mot. at 6.

[55] *Id.*

[56] *Id.*

[57] Pls.' Resp. at 9; *see also Durham v. Accardi*, 587 S.W.3d 179, 185–86 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("Evidence that will support an alter ego finding includes (1) the payment of alleged corporate debts with personal checks or other commingling of funds, (2) representations that the individual will financially back the corporation, (3) the diversion of company profits to the individual for the individual's personal use, (4) inadequate capitalization, and (5) any other failure to keep corporate and personal assets separate.").

[58] Pls.' First Am. Compl at ¶ 22(h).  The term "Corporate Affiliates" is defined differently in the Plaintiffs' complaint and their Requests for Production for Documents.

or documents related to A, would be relevant to Plaintiffs' alter ego theory—even if A is otherwise an alter ego of the individual defendants.

In their pleadings, the parties allege that pursuant to agreements, Forte provided staffing and project management services to Kako'o Services, Akahi Associates, and Kili;[59] Gonzalez was employed by Kukulu and Akahi Associates;[60] and Kahua Services, LLC and Kukulu provided Forte with "back office" support including accounting services, HR services, proposal writing support, recruiting support, credentialing support and compliance.[61] Responsive documents among these entities are relevant to Plaintiffs' alter ego theory; and these are included in Plaintiffs' definition of "Corporate Affiliates." Indeed, in RFP No. 26 (discussed later), Plaintiffs properly narrow its scope to "any Corporate Affiliate . . . for which Forte or Luis M. Gonzalez provided any management, staffing, administrative, or other services."[62]

However, Bestica, LLC, which is also listed in Plaintiffs' definition, stands on a somewhat different footing. Plaintiffs' complaint alleges only that Forte was attempting to establish a joint venture with Bestica for a SDVOSB contract, but that Defendants diverted that opportunity to Kako'o, presumably, by forming a joint venture between Bestica and Kako'o.[63] However, there is no allegation that Plaintiffs provided services to Bestica or any Bestica-Kako'o joint venture, or otherwise owed an obligation by the latter. Accordingly, responsive documents

---

[59] Pls.' First Am. Compl. at ¶ 39; Defs.' First Am. Ans. & Countercls. at ¶¶ 39, 139; Pls.' Ans. to Defs.' Countercls. at ¶ 31.

[60] Pls.' First Am. Compl. at ¶ 20(b); Defs.' First Am. Ans. & Countercls. at ¶¶ 119, 120; Pls.' Ans. to Defs.' Countercls. at ¶ 28.

[61] Defs.' First Am. Ans. & Countercls. at ¶ 143; *see also* Pls.' First Am. Compl. at ¶¶ 46–50.

[62] Pls.' First Written Disc. to Defs. at 13.

[63] Pls.' First Am. Compl. at ¶ 60(b).

between any Corporate Affiliate and either Bestica or Bestica-Kako'o joint venture would not be relevant to Plaintiffs' alter ego theory.[64]

Consequently, for purposes of RFP Nos. 11, 19, 22, 23, and 24 (and RFP Nos. 14, 69, 70, 71, 72, and 73, which are discussed later), the Court coins a new term "**Subject Affiliate**" to limit their scope. A "Subject Affiliate" means a "Corporate Affiliate" as defined in Plaintiffs' Requests for Production for Documents[65] but (a) to or for which Forte or Gonzalez provided any management, staffing, administrative, or other services or (b) which provided any services to Forte, including, but not limited to, accounting services, HR services, proposal writing support, recruiting support, credentialing support and compliance. This definition of "Subject Affiliate" does not however alter the definition of "Corporate Affiliate" in Plaintiffs' Requests for Production for Documents; that term is used in certain RFPs that are not in dispute on this motion and is properly used in other respects in the RFPs at issue on this motion, so, the Court leaves undisturbed the definition of "Corporate Affiliate."

The Court **MODIFIES** RFP Nos. 11, 19, 22, 23, and 24 as follows:

- RFP No. 11: All invoices issued by any Corporate Affiliate to Forte Human Capital, Inc. and by *any Subject Affiliate* to *any other Subject Affiliate* from January 1, 2015, through the present, including invoices for administrative support, overhead, accounting services, legal services, HR services, IT services, or any other services or charges.
- RFP No. 19: All documents evidencing wire transfers, ACH transfers, or electronic payments between Forte Human Capital, Inc. and any Corporate Affiliate, or *among Subject Affiliates*, from January 1, 2015, through the present, including wire transfer confirmations, ACH authorizations, and bank records showing the transfers.
- RFP No. 22: All service agreements, management agreements, or other contracts among *Subject Affiliates*, including agreements between *any two or more Subject Affiliates* for provision of services, cost sharing, overhead allocation, or any other

---

[64] To be sure, RFP Nos. 40 through 43, which are not at issue on this motion, seek documents pertaining to opportunity diversion (which is relevant to Plaintiffs' tortious interference claim) and should meet Plaintiffs' needs in this case.

[65] Pls.' First Written Disc. to Defs. at 1.

arrangement.  Intercompany agreements are discoverable regardless of execution date, including agreements executed before January 1, 2015, if such agreements remained in effect or governed transactions during the Relevant Period (January 1, 2015, through the present).

- RFP No. 23: All promissory notes, loan agreements, lines of credit, credit applications, or other evidence of debt between Forte Human Capital, Inc. and any Corporate Affiliate, or *among Subject Affiliates*.  Loan agreements and promissory notes are discoverable regardless of execution date, including agreements executed before January 1, 2015, if such loans remained outstanding during the Relevant Period (January 1, 2015, through the present).  For transaction records such as repayment schedules, payment histories, and interest calculations, produce records from January 1, 2015, through the present only.

- RFP No. 24: All documents concerning intercompany charges, cost allocations, overhead allocations, or expense allocations between Forte and any Corporate Affiliate, or *among Subject Affiliates*, including allocation methodologies, spreadsheets showing allocations, and authorizations for such charges.

The Court **GRANTS IN PART** Defendants' motion as to RFP Nos. 11, 19, 22, 23, and 24 as **modified**.

## 2.  *RFP No. 14*

RFP No. 14 requests: All documents showing distributions, dividends, compensation, or other payments made by any *Corporate Affiliate* to any Individual Defendant from January 1, 2015, through the present, including W-2s, 1099s, K-1s, distribution schedules, compensation agreements, bonus payments, and all payment records.[66]  As to RFP No. 14, the parties make similar arguments as they advance regarding RFP Nos. 11, 19, 22, 23, and 24 discussed *supra*.

The Court therefore **MODIFIES** RFP No. 14 as follows: All documents showing distributions, dividends, compensation, or other payments made by any *Subject Affiliate* to any Individual Defendant from January 1, 2015, through the present, including W-2s, 1099s, K-1s, distribution schedules, compensation agreements, bonus payments, and all payment records.  The Court **GRANTS IN PART** Defendants' motion as to RFP No. 14 as **modified**.

---

[66] Pls.' First Written Disc. to Defs. at 11–12.

### 3. RFP Nos. 25 and 26

These RFPs state as follows:[67]

- RFP No. 25: All government contracts, subcontracts, task orders, delivery orders, modifications, and related documents for contracts that Forte Human Capital, Inc. or Luis M. Gonzalez managed, performed services on, or was involved with from January 1, 2015, through the present.
- RFP No. 26: All government contracts held by any Corporate Affiliate during the period January 1, 2015, through the present for which Forte or Luis M. Gonzalez provided any management, staffing, administrative, or other services.

Defendants state that they are producing documents related to Forte; however, they contend, any documents made by any "Corporate Affiliate" before 2020 or after May 2024 are not relevant to any claims and are not proportional to the needs of the case.[68]  The Court has addressed temporal scope in Part III(A) *supra*.  The Court **DENIES** Defendants' motion as to RFP Nos. 25 and 26.

### 4. RFP Nos. 31 and 33

These RFPs state as follows:[69]

- RFP No. 31: All applications, certifications, representations, and filings made to the Small Business Administration (SBA) by or on behalf of Forte Human Capital, Inc. or any Corporate Affiliate concerning SDVOSB status, Native Hawaiian Organization status, small business status, or any other SBA program.  SBA certifications and applications are discoverable regardless of filing date, including those made before January 1, 2015, if such certifications remained in effect or were relied upon during the Relevant Period (January 1, 2015, through the present).
- RFP No. 33: All correspondence, notices, inquiries, or other communications between any Defendant, Forte, or any Corporate Affiliate and the Small Business Administration from January 1, 2015, through the present.

Defendants object only that any documents made by any "Corporate Affiliate" before 2020 or after May 2024 are not relevant to any claims, impose an undue burden, and are not proportional

---

[67] *Id.* at 12–13.

[68] Defs.' Mot. at 7.

[69] Pls.' First Written Disc. to Defs. at 13.

to the needs of the case.[70]  Their argument thus boils down to a dispute over the temporal scope

of the RFPs, which the Court has addressed in Part III(A) *supra*. The Court **DENIES**

Defendants' motion as to RFP Nos. 31 and 33.

### 5.  *RFP No. 38*

RFP No. 38 requests: All invoices from KKDLY LLC to Forte Human Capital, Inc. or

any Corporate Affiliate for accounting services, tax preparation, or other professional services

from January 1, 2015, through the present.[71]  Defendants point out that Judge Schydlower

already ordered KKDLY to respond to Plaintiffs' subpoena.[72]  They argue that requiring them to

duplicate this effort is unduly burdensome and costly; as before, they also advance the same

argument about the temporal scope.[73]

Defendants, however, fail to direct the Court to the specific items in Plaintiffs' subpoena

that seek the same documents as requested in RFP No. 38.  Moreover, Plaintiffs point out that on

January 5, 2026, four days before Defendants filed the instant motion, KKDLY for the first time

produced some documents in response to the subpoena.[74]  So, it is not clear whether the

documents requested in RFP No. 38 were in KKDLY's production.  The Court **DENIES**

Defendants' motion as to RFP No. 38.

---

[70] Defs.' Mot. at 7.

[71] Pls.' First Written Disc. to Defs. at 14.

[72] Defs.' Mot. at 7.

[73] *Id.*

[74] Pls.' Resp. at 4.

### 6. *RFP Nos. 56, 57, and 58*

These RFPs state as follows:[75]

- RFP No. 56: All documents concerning the employment of *Luis Angel Gonzalez (son of Plaintiff Luis M. Gonzalez)* by any Corporate Affiliate, including: employment application, offer letter, employment agreement, job descriptions, performance evaluations, personnel file documents, and compensation records.
- RFP No. 57: All communications between any Defendant and Human Resources personnel or any manager concerning Luis Angel Gonzalez's employment, performance, or termination, including the reasons for termination, related directives, and subsequent correspondence.
- RFP No. 58: All documents relating to the termination of Luis Angel Gonzalez's employment, including: termination notices, separation agreements, exit interviews, communications explaining the reasons for termination, and any documents showing the decision-making process.

The subject matter of these RFPs is the termination of Gonzalez's son, Luis, from his employment with a Corporate Affiliate, which, according to Defendants, was Kukulu.[76]

Defendants argue that Luis's termination is not relevant to any of Plaintiffs' claims, he is not a party to this lawsuit, Gonzalez does not have standing to assert claims on his son's behalf, and Plaintiffs are improperly fishing for a potential claim for Luis, which has no bearing on this lawsuit.[77]

Citing Federal Rule of Evidence 404(b)(2), Plaintiffs respond that evidence of retaliatory termination of Gonzalez's son is relevant to prove motive, intent, plan, and "pretext."[78] Plaintiffs' complaint alleges that in November 2023, after Gonzalez confronted Defendants about Forte's finances, Defendants took several "retaliatory" steps against Plaintiffs between

---

[75] Pls.' First Written Disc. to Defs. at 15–16.

[76] Pls.' First Am. Compl. at ¶¶ 51(g), 67(c)(vi); *see also id.* at ¶ 60(g); Defs.' First Am. Ans. & Countercls. ¶ 51(g).

[77] Defs.' Mot. at 8.

[78] Pls.' Resp. at 10.

November 2023 and May 2024, including terminating Luis's employment.[79]  Further, according to these allegations, Defendants terminated Forte's contract staffing and management agreements with Corporate Affiliates, claiming an "affiliation issue"-related conflict of interest between Plaintiffs and Defendants.[80]  It thus appears that given the temporal proximity between Gonzalez's confrontation about Forte's finances and Luis's termination as well as Forte's services agreement termination, Plaintiffs seek documents about Luis's termination to show that Defendants' stated reason for terminating the services agreements—à la, "affiliation issue"—was pretextual or fabricated.[81]

Whether such evidence would be admissible at trial, "[t]he threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at trial." *Angers v. Franco*, No. CV 24-688, 2025 WL 2799027, at *2 (E.D. La. Oct. 2, 2025).  The Court **DENIES** Defendants' motion as to RFP Nos. 56, 57, and 58.  *See* Fed. R. Civ. P. 26 advisory committee's notes to 2000 amendment ("[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."); *id.* advisory committee's notes to 2015 amendment (Discovery of information that could be used to impeach a likely witness is not foreclosed by the amendments.).

### 7.  *RFP Nos. 59, 60, 61, 62, and 63*

These RFPs state as follows:[82]

- RFP No. 59: All loan agreements, promissory notes, credit agreements, or other documents evidencing loans between any Defendant or any Corporate Affiliate and

---

[79] Pls.' First Am. Compl. at ¶¶ 46–51; *see also id.* at ¶¶ 51(g), 60(g), 67(c)(vi).

[80] *Id.* at ¶¶ 51(f), 67(c)(vi).

[81] *See id.* at ¶ 67(c)(vi); Pls.' Resp. at 10.

[82] Pls.' First Written Disc. to Defs. at ¶ 16.

*Spectrum or any Spectrum-affiliated entity*. Loan agreements are discoverable regardless of execution date, including agreements executed before January 1, 2015, if such loans remained outstanding or were being repaid during the Relevant Period (January 1, 2015, through the present).

- RFP No. 60: All documents concerning loan applications submitted to *Spectrum* by any Defendant or any Corporate Affiliate from January 1, 2015, through the present, including: applications, supporting financial statements, business plans, collateral descriptions, personal financial statements, and correspondence with Spectrum.

- RFP No. 61: All payment records, disbursement records, loan statements, and transaction records concerning loans from *Spectrum* to any Defendant or any Corporate Affiliate from January 1, 2015, through the present.

- RFP No. 62: All communications between any Defendant and *Spectrum* or any *Spectrum representative* concerning loan applications, loan terms, repayment, modifications, defaults, or satisfaction of loans from January 1, 2015, through the present.

- RFP No. 63: All documents evidencing satisfaction, modification, restructuring, default, or current status of any loan from *Spectrum* to any Defendant or any Corporate Affiliate from January 1, 2015, through the present.

Plaintiffs argue that these RFPs seek documents to prove undercapitalization for purposes of Plaintiffs' alter ego theory of liability.[83] Defendants point out that Plaintiffs' complaint does not mention "Spectrum" and "Spectrum-affiliated entity" and that these terms are not defined in Plaintiffs' Requests for Production of Documents.[84]

The Court observes that in their counterclaims, Defendants reference an entity named, "Spectrum Healthcare Resources, Inc" by way of providing background information.[85] However, in their response to Defendants' motion, Plaintiffs make no efforts to provide any detail about "Spectrum" as used in these RFPs, nor do they explain whether Forte or Gonzalez provided any services to the "Spectrum" entity. Consequently, the Court has no basis to determine whether the requested documents regarding "Spectrum" are relevant to Plaintiffs'

---

[83] Pls.' Resp. at 10.

[84] Defs.' Mot. at 8–9.

[85] Defs.' First Am. Ans. & Countercls. at ¶ 111.

claims or alter ego theory.  The Court **GRANTS** Defendants' motion as to RFP Nos. 59, 60, 61, 62, and 63.

### 8.  *RFP Nos. 69, 70, 71, 72, and 73*

These RFPs state as follows:[86]

- <u>RFP No. 69</u>: All audit reports, investigation reports, review reports, or findings issued by the U.S. Department of Labor, U.S. Small Business Administration, Department of Veterans Affairs, or General Services Administration concerning any Defendant, Forte Human Capital, Inc., or *any Corporate Affiliate* from January 1, 2015, through the present.
- <u>RFP No. 70</u>: All notices of audit, requests for information, subpoenas, or other correspondence from *any government agency* initiating or conducting an audit, investigation, or review of any Defendant, Forte, or any *Corporate Affiliate* from January 1, 2015, through the present.
- <u>RFP No. 71</u>: All submissions, responses, explanations, or corrective action plans provided to *any government agency* in connection with an audit, investigation, or review from January 1, 2015, through the present.
- <u>RFP No. 72</u>: All notices of violation, findings of deficiency, notices of required remediation, or other correspondence from *any government agency* identifying non-compliance, violations, or required corrective actions concerning any Defendant, Forte, or *any Corporate Affiliate* from January 1, 2015, through the present.
- <u>RFP No. 73</u>: All internal communications among Defendants or between Defendants and *any Corporate Affiliate* employee, officer, director, or counsel concerning *any government* audit, investigation, or review from January 1, 2015, through the present.

These RFPs seek audit and investigation reports, government correspondence, audit responses, notices of violations, and internal communications related to audits or investigations involving Defendants, Forte, or any Corporate Affiliate.

Defendants argue that the RFPs are not relevant to the extent they seek documents concerning "any Corporate Affiliate" from January 1, 2015, through the present, whether or not they relate to Forte.[87]  Plaintiffs point out that their complaint alleges that Defendants stated they

---

[86] Pls.' First Written Disc. to Defs. at 16–17.

[87] Defs.' Mot. at 9.

terminated Forte's services agreements due to "affiliation concerns"[88] and argue that government findings of affiliation issues would prove when Defendants knew of these issues and whether the stated reason was pretextual.

Defendants' objection to the temporal scope has been addressed in Part III(A) *supra*.  In addressing RFP Nos. 56, 57, and 58 *supra*, the Court has recounted Plaintiffs' "pretext" allegations and arguments about Defendants' alleged stated reason for terminating Forte's services agreements.  The Court observes that unlike RFP No. 69, the remaining RFPs regarding audits and investigations refer broadly to "any government agency" or "any government audit."  Further, unlike RFP Nos. 69, 70, 72, and 73, RFP No. 71 is not limited to Defendants, Forte, or "any Corporate Affiliates."  As such they are overbroad.

The Court **LIMITS** the scope of RFP Nos. 69, 70, 71, 72, and 73 as follows:

- "Any government agency" or "any government" as used in RFP Nos. 70, 71, 72, and 73, **MEANS** the U.S. Department of Labor, U.S. Small Business Administration, Department of Veterans Affairs, or General Services Administration as referenced in RFP No. 69.
- The term "Corporate Affiliate" in RFP Nos. 69, 70, 71, 72, and 73 is **SUBSTITUTED by** "Subject Affiliate" as the latter term is defined in Part III(B)(1) *supra*.

Further, the Court **MODIFIES** RFP No. 71 as follows: "All submissions, responses, explanations, or corrective action plans provided—by any Defendant, Forte, or any Subject Affiliate—to the U.S. Department of Labor, U.S. Small Business Administration, Department of Veterans Affairs, or General Services Administration in connection with an audit, investigation, or review from January 1, 2015, through the present.  With these limitations and modifications, the Court **GRANTS IN PART** Defendants' motion as to RFP Nos. 69, 70, 71, 72, and 73.

---

[88] Pls.' Resp. at 10; *see also* Pls.' First Am. Compl. at ¶¶ 37, 51(f), 60(h), 67(c)(vi), 74.

### 9. *RFP Nos. 76, 77, and 78*

These RFPs seek documents regarding personal financial information about Shishido,

Komeiji, and Gusman:[89]

- RFP No. 76: All personal financial statements for each Individual Defendant for years 2020, 2021, 2022, 2023, and 2024 year-to-date, including statements prepared for lending institutions, SBA applications, or personal use.
- RFP No. 77: All tax returns (IRS Form 1040) for each Individual Defendant for tax years 2020, 2021, 2022, and 2023, including all schedules and attachments.
- RFP No. 78: All documents showing the net worth, assets, liabilities, and income of each Individual Defendant as of December 31, 2020, 2021, 2022, 2023, 2024 and as of the present date.

Defendants argue that these RFPs seek improper post-judgment discovery.[90] Plaintiffs

respond that the requested documents are discoverable because they are relevant to their

allegations that individual defendants' shares of income from their government contracting

business were not consistent with their equity interests in the Corporate Affiliates in violation of

the Fund's status as a Small Business Administration-approved NHO company, that Gonzalez

did not benefit from his investment in Forte in proportion to his equity interests in Forte, and that

Forte was not adequately compensated for its services to the other Corporate Affiliates in the

same manner that the Corporate Affiliates benefited from Defendants' contracting business.[91]

Plaintiffs also argue that the requested documents are relevant to their alter ego theory of

liability.[92]

---

[89] Pls.' First Written Disc. to Defs. at 17.

[90] Defs.' Mot. at 9. Defendants also argue that the RFPs seek confidential and proprietary information, *id.*; however, Plaintiffs point out that Individual Defendants' privacy interest is protected through mandatory redaction of their Social Security numbers and through "ATTORNEYS' EYES ONLY" designation—as provided in their Agreed Confidentiality and Protective Order (ECF No. 56).

[91] Pls.' Resp. at 10; *see also* Pls.' First Am. Compl. at ¶¶ 23, 42(b), 67(b)(iv)-(v).

[92] Pls.' Resp. at 10.

Although facts about the financial status of a party are generally not discoverable before obtaining a judgment against the party, *see F.T.C. v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) ("Under most circumstances, . . . a private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered."),[93] such discovery is allowed when it is relevant to any claim or defense, *Whale Capital, L.P. v. Ridgeway*, No. CV 22-2570, 2023 WL 7220560, at *6 (E.D. La. Nov. 2, 2023). For instance, pre-judgment discovery of a party's assets is "commonly allowed" as relevant where alter ego theory of liability is asserted. *Id*. & nn.38–39 (citing *Mack Energy Co. v. Red Stick Energy, L.L.C.*, No. 16-1696, 2019 WL 3403369 (W.D. La. July 26, 2019)). The Court **DENIES** Defendants' motion as to RFP Nos. 76, 77, and 78.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion for Protective Order (ECF No. 57) is **GRANTED IN PART and DENIED IN PART**.

**So ORDERED and SIGNED this  11th  day of February 2026.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

---

[93] *See also Seabulk Towing, Inc. v. Oceanografia S.A. de C.V.*, No. MISC. 01-3791, 2002 WL 1837855, at *1 (E.D. La. Aug. 8, 2002) ("Generally facts about the financial status of a party are not discoverable prior to obtaining a judgment against the party." (citing Fed. Rule Civ. P. 26(b)(2) advisory committee's notes to 1970 amendment)).